IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 22-CR-891-KG |
| | ) | |
| JEFFREY DEAN BIDDLE, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>UNITED STATES' SENTENCING MEMORANDUM</u>**

**Question**:  How does the Court ensure that Biddle never harms another innocent child?

**Answer**:  By imposing a life sentence, reflecting the life-long damage Biddle has inflicted on numerous victims, some as young as 18 months old.

Defendant Jeffrey Dean Biddle has been convicted federally of various offenses that involved him chatting in a sexual manner with a minor he believed to be 8 years old, requesting pornographic photos of that minor, and receiving what he believed were pornographic photos of that minor.  This conduct, in and of itself, is disturbing.  However, the truly horrific nature of the danger Biddle presents to the public is not fully captured in the conduct related to his federal offenses.  Rather, a review of Biddle's history and characteristics make clear that he is a serial sexual predator of our societies' most vulnerable population: children.  By Biddle's own admission, he has molested at least eleven children, most of whom were under the age of five. Indeed, Biddle's latest conviction for sexually abusing an 18-month baby shocks the conscience. There can be no question that type of sexual abuse represents the worst of the worst criminal conduct.  There is no question Biddle's repeated, premeditated, and intentional sexual abuse of

1

numerous children has had devastating consequences, permanently and irrevocably scarring

them for life.  The only question that remains is whether Biddle's crimes and predilections are

sufficiently heinous that he deserves to be removed from society for the rest of his life.  The

answer is unequivocally yes.

The sentencing guidelines for Biddle's counts of conviction call for a range of 262 to 327

months imprisonment.  However, the parties entered into a Rule 11(c)(1)(C) plea agreement with

a stipulated range of 35 years to life.  The United States requests that the Court accept the plea

agreement and find that an upward variance to a sentence of life imprisonment is appropriate in

this case.  Indeed, a life sentence is the only way to ensure that Biddle will never harm another

child again.

## I.      Offense Conduct

In August 2021, Homeland Security Investigations (HSI) began investigating Biddle

because of the sexual abuse of an 18-month-old baby.  The child had been living in Deming,

New Mexico, and law enforcement learned that the baby had been in Biddle's care.  Biddle was

a known pedophile and sex-offender, and law enforcement learned Biddle had also been seeking

out minors online and attempting to take photographs of minors at a local church.  On October 7,

2021, HSI executed a search warrant at Biddle's residence.  Law enforcement found items that

belonged to infants and toddlers, including both used and unused diapers.[1]

Law enforcement requested that Biddle engage in an interview.  Biddle agreed.  Biddle

was advised of *Miranda* rights and agreed to waive those rights and be interviewed.  During

---

[1] Law enforcement later learned Biddle had kept those items as keepsakes from his sexual abuse
of toddlers.  The diapers contained his ejaculate from when he raped the babies who wore them.

Biddle's interview, he admitted to a wide range of disturbing conduct.[2]  First, he admitted that he had sexually abused the 18-month-old baby on several occasions.  Biddle stated, *inter alia*, he had penetrated the baby's anus with his penis.  Biddle also admitted he sexually abused the baby's ten-year-old sister by having oral, anal, and vaginal intercourse with the minor.  Biddle further stated he had the baby and the sister perform sexual acts on each other.

Next, Biddle stated he had been chatting with a minor female, whom he believed to be 8 years old, (hereinafter "Doe").  Biddle stated Doe lived in Texas.  Biddle stated they met on Facebook but eventually began texting on his phone.  Biddle explained that he had been talking with Doe for almost three months.  During the chats, Biddle engaged in sexually explicit conversations with Doe, and he requested that she send him naked photos.[3]  Doe did send naked photos of her vagina.  Biddle further explained he thought Doe was eight years old based on a picture he saw, "because she didn't have hair" and "she looked like she was little" (referencing the genital area by pointing to the genital area on himself).  Biddle did not remember Doe's name but stated he just called her "daughter."  Biddle stated that he wanted Doe to travel to Deming, and stated that if she had come, he would have had sex with her.

## II.    Procedural History

After Biddle's interview on October 7, 2021, he was immediately arrested on state charges for his molestation of the 18-month-old baby.  He was charged with two counts of criminal sexual penetration of a child under 13 (1st degree felony), and two counts of criminal sexual contact of an unclothed minor under 13 (2nd degree felony).  During that time, the federal

---

[2] The entire video interview is submitted as Exhibit 1.  The United States also submits the transcript to the interview as Exhibit 2.  Because the exhibits should be sealed, they are filed separately from this pleading.

[3] A summary of those chats is laid out in the PSR paragraph 15.

investigation continued, and HSI obtained several search warrants for various accounts belonging to Biddle.  On February 23, 2022, Biddle was charged in federal court with coercion and attempted coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), production and attempted production of a minor, in violation of 18 U.S.C. §§ 2251(c) & (e), and receipt and attempted receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2).  The parties entered into a global plea agreement in which Biddle agreed to plead guilty to both the state and federal charges.  The state agreed to a sentence of 35 years imprisonment for Biddle on his state charge.  The agreement on the federal side was to a range of 35 years to life imprisonment.  On October 26, 2022, Biddle pled guilty in federal court.

## III.    Biddle's PSR

On December 30, 2022, the probation officer issued the PSR in this case.  Biddle's total offense level is 38, combined with a criminal history category of V, which results in a guidelines range of 262-327 months.  In reaching this range, the probation officer applied a four-level enhancement pursuant to USSG § 2G2.1(b)(1)(A), for an offense involving a minor who had not attained the age of twelve (12 years).

## IV.    Biddle's Sentencing Request and Objection to the PSR

On March 3, 2023, Biddle filed a sentencing memorandum and objection to the PSR. Biddle objects to the four-level enhancement pursuant to USSG § 2G2.1(b)(1)(A), for an offense involving a minor who had not attained the age of twelve (12 years).  Biddle also argues that a sentence of 45-years is sufficient but not greater than necessary to achieve the goals of sentencing.

First, the Court should overrule Biddle's objection to the PSR.  The situation here is akin to if Biddle was talking to a law enforcement officer who he believed was minor under 12, and

he requested pornographic photos.  In the application notes to USSG § 2G2.1(b)(1)(A), the definition of "minor" clearly contemplates a situation where the minor is "fictitious."  USSG § 2G2.1(b)(1)(A), app. note 1; *see also United States v. Gould*, 30 F.4th 538, 541 (6th Cir. 2022) (USSG § 2G2.1(b)(1)(A) enhancement applied when the defendant was chatting with undercover about abusing 8-year-old.  Here, Biddle clearly stated he believed the minor was 8 years old. Accordingly, the enhancement was correctly applied.

Next, Biddle's long history of sexually abusing very young children and his own admission that he cannot help himself when he is around a minor clearly weighs against the imposition of any sentence that would set Biddle loose in society again.  This Court should sentence Biddle to life imprisonment.

## V.     The 3553 Factors Weigh Heavily in Favor of a Life Sentence

Because the guidelines are advisory[4] and only one factor to be considered by the Court in determining a sentence under 18 U.S.C. § 3553, the United States will frame its request within the applicable factors set forth in 18 U.S.C. § 3553.

### A)  18 U.S.C. § 3553(a)(1):  The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The nature and circumstances of the offenses are extremely serious.  Biddle pled guilty to coercion and enticement of a minor, which carries a statutory maximum of life.  Biddle also pled guilty to production of child pornography and was subject to enhanced penalties since he has a

---

[4] "Although the Sentencing Guidelines are now only advisory, they still "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States,* 552 U.S. 38, 49 (2007); *see generally United States v. Booker,* 543 U.S. 220, 246–58 (2005) (striking down the mandatory guidelines regime on Sixth Amendment grounds, not on grounds of disagreement with the policies animating the guidelines regime).

prior abusive sexual conduct involving a minor conviction.  In the Child Pornography Prevention Act of 1996 ("CPPA"), Congress recognized that the production of child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved" since it creates a permanent record of the child's abuse, allowing for continued victimization of that child. S. Rep. 104-358 § 2 (1)(2) (1996).  When Congress enacted the CPPA, it found that the mere existence of pornographic materials containing children, as well as their distribution, "creates the potential from many types of harm in the community and presents a clear and present danger to all children; and it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children" which leads to the abuse and exploitation of children as creation and production of additional pornographic material is needed. S. Rep. No. 104-358, § 2 (10)(A)(B).

The seriousness of the offense is exacerbated by Biddle's history and characteristics. When one views his history, it is impossible to come away with any conclusion other then that he is a serial child molester and bona-fide pedophile.  Biddle now has two prior state convictions for, *inter alia*, criminal sexual contact of a minor under 13.  His first conviction was in 2004 and involved the sexual abuse of a 3-year-old toddler.  Fast forward seventeen years and Biddle's latest conviction involves the sexual abuse of an 18-month-old baby.[5]  What is truly devastating is that we know in between this time, Biddle molested at least nine other children, most of whom were under five years old.  The criminal justice system clearly failed these victims because Biddle received a mere 18-month sentence for his original molestation charge back in 2004.

---

[5] It should be noted that the doctor who examined the 18-month-old opined that the severity of the injuries to the child's anus were some of the most serious injuries he had ever seen.

This Court has the ability to assure that no child will ever be harmed by Biddle again. This Court should not hesitate to take that opportunity.

Unfortunately, while often thought of as resilient, children rarely fully recover from the trauma of sexual abuse. *See* A. Perry and D. DiLillo, Child Sexual Abuse, 147, in N.A. Jackson, Encyclopedia of Domestic Violence, (2007). Sexual trauma can actually affect the neurobiology of children, and such young victims of sexual abuse have more problems with anxiety, high-strung temperament, speech and language delay, inattentiveness and hyperactivity, and are at higher risk for mood disorders. *Id.* While short term effects of sexual abuse include fear, anxiety, anger, depression, and sexually inappropriate behavior, long-term effects include self-destructive behavior, tendency toward revictimization, substance abuse, and sexual maladjustment. The type of sexual abuse that inflicts the most damage on victims is found in cases like this one, which includes a father figure[6] and genital contact. *See* A. Browne and D. Finklehor, Impact of Child Sexual Abuse: A Review of the Research, 60, in B. Finkleman, Child Abuse: Short and Long-Term Effects (1995).

In light of these considerations and Biddle's conduct, the nature and circumstances of the offense and his history and characteristics clearly weigh in favor of imposing a life sentence.

**B) 18 U.S.C. § 3553(a)(2)(a): To Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment**

If ever there was a case where a life sentence is warranted, this is it. To refer to Biddle's conduct as "serious" is a profound understatement. His offense of conviction is just another example that Biddle will stop at no lengths to seek out children to molest. While his conduct for the federal offense of conviction did not involve placing hands on a child, we know that had he

---

[6] Though Biddle does not have any biological children, based on his statements, he had custody and care of most children he molested.

had the opportunity, Biddle would not have hesitated to do so.  Moreover, it is completely appropriate for the Court to consider the harm Biddle has caused to the victims of his other crimes in fashioning an appropriate sentence in this case.  *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

What then, would be a "just punishment?"  In reality, all the Court can do is remove Biddle from society and place him in a facility where he is guaranteed to receive food, shelter, medical care, and even therapy, if he so chooses.  Unfortunately, Biddle's victims probably face a far worse fate.  Statistics tell us each of Biddle's victims suffers a significantly greater risk for later post-traumatic stress and other anxiety symptoms, including depression and suicide attempts.[7] They are three times more likely to have substance abuse problems.  They are much more likely to have academic difficulties.  They are more susceptible to being victims of sexual abuse again in the future.  These psychological problems can lead to significant disruptions in normal development and often have a lasting impact, leading to dysfunction and distress well into adulthood.  Arguably, these statistics become even worse when someone suffers sexual abuse at the tender age that Biddle's victims have.

In terms of promoting respect for the law, a life sentence would not offend the community at large, based upon the facts of this case.  Indeed, there have been a variety of cases where Defendants convicted of similar conduct received lengthy sentences.[8]

---

[7] These statistics were taken from an article entitled, "Darkness to Light," which is attached as Exhibit 3.

[8] *United States v. Grigsby*, 749 F.3d 908, 908 (10th Cir. 2014) (district court did not err in imposing 260–year sentence for Defendant who, among other things, repeatedly sexually abused

In this district, a life sentence for Biddle would be in line with what other similarly situated defendants have received: *United States v. Gilbert J Gallegos*, 20-cr-01587-KG (D.N.M), Doc. 61 (defendant convicted of multiple counts, including production of child pornography and sentenced to 45 years); *United States v. Justin Dain Adams*, 18-cr-03413-KG (D.N.M), Doc. 239 (defendant convicted after trial of multiple counts, including conspiracy to produce child pornography sentenced to 110 years); *United States v. Robert Steven Elliott, II*, 16-cr-00198-RB, Doc. 45 (defendant convicted of multiple counts, including production of child pornography sentenced to 45 years); *United States v. Samuel Elliott*, 14-cr-03822-RB (D.N.M), Doc. 133 (defendant convicted of multiple counts, including production of child pornography sentenced to 110 years);  *United States v. Michael Dameon Blackburn*, 14-cr-00129-WJ, Doc.

---

a nine-year-old child and produced images of the abuse); *United States v. Sarras*, 575 F.3d 1191, 1208, 1220-21 (11th Cir. 2009) (upholding as reasonable a 100-year sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim); *United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); *United States v. Kapordelis*, 569 F.3d 1291, 1318-19 (upholding as reasonable a 420-month sentence, which represented an upward variance from the 262-327-month advisory guidelines range and included 240-month sentences on counts charging production of child pornography under § 2251(a) and 180-month consecutive sentences on counts charging receipt of child pornography under § 2252A(a)(2)(A)); *United States v. Huffstatler*, 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year-old boy); *United States v. Raplinger*, 555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence for photographing and having sexual intercourse with a 15-year-old girl), *cert. denied,* 129 S.Ct. 2814 (2009); *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-month (62.5 year) sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters), *cert. denied*, 129 S.Ct. 962 (2009); *United States v. Vowell,* 516 F.3d 503, 511-13 (6th Cir. 2008) (upholding as reasonable a 780-month (65 year) sentence for a 40-year-old man who had sexual intercourse with his girlfriend's 8-year-old daughter while being videotaped by his girlfriend); *see also United States v. Paton*, 535 F.3d 829, 837-38 (8th Cir. 2008) (concluding that life sentence for five counts of production of child pornography was not cruel and unusual punishment in violation of the Eighth Amendment).

119 (defendant convicted of multiple counts including production of child pornography sentenced to 120 years).

Accordingly, the Court should impose a life sentence.

### C) 18 U.S.C. § 3553(a)(2)(b):  To Afford Adequate Deterrence to Criminal Conduct

The criminal conduct at issue is the sexual exploitation and abuse of children.  Does a life sentence afford adequate deterrence to that conduct?  It certainly does, especially as it relates directly to Biddle.  Aside from Biddle's historical and pervasive involvement in this conduct (the best predictor of future conduct), it has been observed that pedophiles do not follow the same pattern of "aging out" like other offenders:

> "In a study that examined the relationship between age and types of sexual crimes, Dickey (et al) found that up to 44% of pedophiles in their sample of 168 sex offenders were in the older adult age range (age, 40-70 years). When compared with rapists and sexual sadists, pedophiles comprise 60% of all older offenders, indicating that **pedophiles offend in their later years at a greater rate than other sexual offenders**."

*See* Ryan C.W. Hall & Richard C.W. Hall, *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, 82 Mayo Clinic Proc. 457, 458 (2007)(emphasis added).  Considering Biddle's history and what is known generally about those who offend against children, anything less than life would give him an opportunity—which he has proven time and time again that he will take—to harm a child.  Furthermore, a recidivism study, specific to sex offenders, has concluded that there is no empirical basis to account for age in sex offenders when assessing future risk of reoffending.  G. Harris and M. Rice, *Adjusting Actuarial Violence Risk Assessments Based on Aging or the Passage of Time,* 34 Crim. J. and Behav., 310-11, (2007).  Unfortunately, contrary to Biddle's arguments, his age at the time of release is no indication that he will not remain a risk to the community upon his release.

As for deterring other offenders who might be tempted to engage in similar behavior, "[g]eneral deterrence is crucial in the child pornography context." *United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012).   Accordingly, a life sentence is appropriate.

### D)  18 U.S.C. § 3553(a)(2)(C):  To Protect the Public from Further Crimes of Defendant

This factor has already been addressed above.  Suffice it to say, given Biddle's history and his escalating sexual conduct toward minors, the need for a sentence that protects the public—and more specifically children—from Biddle should be apparent.  The risk associated with Biddle's conduct is too great to ever set him loose again in society.

### E)  18 U.S.C. § 3553(a)(5):  Any Pertinent Policy Statement issued by the Sentencing Commission

The policy statement issued by the Sentencing Commission at USSG § 5K2.0(b) advises against a departure from the Guidelines sentence in matters of this sort, as it provides:

DOWNWARD DEPARTURES IN CHILD CRIMES AND SEXUAL OFFENSES.--Under 18 U.S.C. § 3553(b)(2)(A)(ii), the sentencing court may impose a sentence below the range established by the applicable guidelines only if the court finds that there exists a mitigating circumstance of a kind, or to a degree, that--

(1) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, United States Code, taking account of any amendments to such sentencing guidelines or policy statements by act of Congress;

(2) has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines; and

(3) should result in a sentence different from that described.

The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements. Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically

identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted.

Even if there are any mitigating circumstances in this matter, none meet the rigorous

criteria set forth in this policy statement.

### F) 18 U.S.C. § 3553(a)(7): The Need to Provide Restitution to Any Victims of the Offense

There is no restitution request in this case.

## III.     Conclusion

The only just outcome in this case is to impose a life sentence.  This Court should not

hesitate to permanently remove Biddle from society and provide peace of mind to the public.

Respectfully submitted,

**ALEX M.M. UBALLEZ**
UNITED STATES ATTORNEY

_____/s/_____
MARISA A. ONG
MATILDA VILLALOBOS
*Assistant United States Attorneys*
200 N. Church St.
Las Cruces, New Mexico 88001
Phone: (575) 522-2304
Fax: (575) 522-2391

I hereby certify that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system on
March 24, 2023, which will send electronic
notification to defense counsel of record.

   /s/ Marisa A. Ong
Marisa A. Ong
*Assistant United States Attorney*